IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CITIZENS FOR PENNSYLVANIA'S FUTURE, RALPH HYSONG, ANNA MAY MOORE, and ROBERT JONES, <br><br> Plaintiffs <br><br> v. <br><br> FIRSTENERGY GENERATION CORP., <br><br> Defendant | ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No. <br><br><br> FILED ELECTRONICALLY |

**COMPLAINT**

**Introduction**

1. This is a citizen suit, brought under Section 304 of the Clean Air Act (CAA), as amended, 42 U.S.C. § 7604. Plaintiff Citizens for Pennsylvania's Future (PennFuture) seeks a declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including attorneys and expert witness fees, for repeated violations by FirstEnergy Generation Corp. (Defendant) of emission standards in the Pennsylvania State Implementation Plan (SIP) and in the permit issued to Defendant for its Bruce Mansfield plant located in Shippingport, Beaver County, Pennsylvania (the Plant) under the CAA and the Pennsylvania Air Pollution Control Act (APCA) as alleged in Counts 1-6. Plaintiffs Ralph Hysong, Anna May Moore, and Robert Jones seek relief for private nuisance, public nuisance, and trespass by Defendant as alleged in Counts 7-9.

2.      Defendant's violations at the Plant have resulted in and are resulting in persistent, unlawful emissions of pollutants that are known to cause serious health consequences, including respiratory and cardiovascular disease and premature death. These violations have resulted in and are resulting in actual and threatened injury to members of PennFuture living near the Plant.

## Jurisdiction and Venue

3.      This Court has subject matter jurisdiction under Section 304(a) of the CAA, 42 U.S.C. § 7604(a), and 28 U.S.C. §§ 1331, 1367.

4.      On May 22, 2007, Plaintiff PennFuture gave notice of Defendant's violations of the CAA and APCA, and notice of PennFuture's intent to file a citizen suit, to the Defendant, the Administrator of the United States Environmental Protection Agency (EPA), the Regional Administrator of EPA Region 3, the Governor of Pennsylvania, and the Secretary of the Pennsylvania Department of Environmental Protection (DEP), in satisfaction of the requirements of Section 304(b)(1)(A) of the CAA, 42 U.S.C. § 7604(b)(1)(A); 40 C.F.R. Part 54; and 35 P.S. § 4013.6(d).  A copy of this notice is Exhibit A to this Complaint.

5.      More than 60 days have passed since the notice described in the preceding paragraph and neither EPA nor DEP has commenced and is diligently prosecuting a civil or criminal action in a court to redress the violations.

6.      Venue is appropriate in the Western District of Pennsylvania under Section 304(c)(1) of the CAA, 42 U.S.C. § 7604(c)(1), and 28 U.S.C. § 1391(b), because the Plant is located in this district.

## Parties

7. Plaintiff PennFuture is a nonprofit corporation organized and existing under the laws of Pennsylvania with offices in Harrisburg, Pittsburgh, Philadelphia, and West Chester. PennFuture's purposes include protecting the environment and public health in Pennsylvania, including air quality, through litigation and advocacy.

8. PennFuture members live, work, recreate, and conduct other activities in Beaver County and other parts of Pennsylvania affected by the violations alleged in this Complaint.

9. PennFuture members have suffered, and will continue to suffer, actual and threatened injury to their health and welfare due to the violations of the CAA and the APCA described herein. PennFuture members are exposed to, and threatened with exposure to, particles and other pollution from the Plant. As a result, PennFuture members suffer from and are at increased risk of a variety of adverse health effects that are attributable to particle pollution.

10. Further, PennFuture members have suffered, and will continue to suffer, actual and threatened interference with their use and enjoyment of property and surrounding areas from the violations alleged in this Complaint, including but not limited to deposits on their property and diminution of property value.

11. Plaintiff and PennFuture member Ralph Hysong has lived in Raccoon Township, Pennsylvania for 58 years and in Shippingport Borough, Pennsylvania for four years. Mr. Hysong lives about one mile southeast of the Plant. Mr. Hysong sees gray or brown particulate matter emitted daily from units one and two; white rain from unit three almost daily; and black matter from all units about four or five times a month. Mr. Hysong and his family have a number of health problems which he believes are a result

of breathing the Plant's emissions to the air.  Mr. Hysong suffers from respiratory and cardiovascular disease.  Each of his four children suffered from frequent upper respiratory infections growing up, and one has asthma.  Mr. Hysong's four grandchildren living in the area have various health problems.  Because of the Plant emissions, Mr. Hysong does not open the windows of his home or grow a garden.  Mr. Hysong has removed fruit trees from his property and limits outdoor playtime for his grandchildren.  Mr. Hysong once had to cut short an outdoor family reunion due to black fallout from the Plant.  In addition, Plant fallout has damaged Mr. Hysong's vehicles, fascia boards, garden, propane tanks, and air conditioner, and devalued his home and surrounding property in Raccoon Township and mobile home and lots in Shippingport Borough.  Additional details appear in Mr. Hysong's declaration, which is Exhibit B to this Complaint.

12.     Plaintiff and PennFuture member Anna May Moore resides in Hookstown, Pennsylvania.  Ms. Moore lives about two miles from the Plant.  From her property, she sees the plume from the stacks, which appears brown or a darker color about once a week. When she sees the darker plumes, Ms. Moore looks for fallout on her property.  She has had fallout on her pool, plants, vehicles, and plastic outdoor flowers.  On July 22, 2006, Ms. Moore's buildings, horse arena, and hay fields and trucks were covered with black residue.  After this fallout incident, no one would buy Ms. Moore's calves.  Ms. Moore's total loss from this fallout incident was about $40,000.  Additional details appear in Ms. Moore's declaration, which is Exhibit C to this Complaint.

13.     Plaintiff and PennFuture member Robert Jones resides in Aliquippa, Pennsylvania, about a mile from the Plant.  About five out of seven days each week he

sees a dingy darkish grey smoke coming from the stack. He notices black fallout on his property one or two days out of the week, specifically on vegetation, outdoor furniture, cars, mailbox, wood decks, lawnmowers, awning, and his grandchildren's swing set. Since the fallout of July 2006, Mr. Jones and his family have not been able to use the swimming pool due to deposition from the Plant. Due to the pollution, Mr. Jones and his family no longer spend time outside. Additional details appear in Mr. Jones' declaration, which is Exhibit D to this Complaint.

14. Additional PennFuture members living in the area of the Plant have suffered and are suffering damages to their health, well-being and property from air pollution from the Plant. Declarations on behalf of several of these members are attached to this Complaint as Exhibits E-I.

15. The acts and omissions alleged herein expose PennFuture members to harmful pollution that threatens their health and welfare, interferes with their use and enjoyment of property and surrounding areas, injures their economic interests, denies them protection of their health and well-being guaranteed by the CAA and the APCA, and negatively impacts their aesthetic and recreational interests. The relief requested herein will redress these injuries.

16. Defendant FirstEnergy Generation Corp. is the owner and operator of the Plant, a coal-fired electricity generating station with three main combustion units.

**Statutory and Regulatory Background**

17. A central purpose of the CAA is "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1).

18. To achieve this and other purposes, the states bear primary responsibility under the CAA for regulating sources of air pollution and attaining ambient air quality standards. See, e.g., 42 U.S.C. §§ 7401 (state responsibility), 7410 (state implementation plans).

19. The purposes of the APCA include the protection of public health, safety and well-being of Pennsylvania's citizens and the implementation of the CAA in Pennsylvania. 35 P.S. § 4002(a).

20. Pennsylvania has adopted a SIP to fulfill its air quality obligations under the CAA. 40 C.F.R. § 52.2020.

21. Under Pennsylvania law, a person may not permit the emission into the outdoor atmosphere of visible air contaminants with an opacity either: (1) equal to or greater than 20% for a period or periods aggregating more than 3 minutes in any 1 hour; or (2) equal to or greater than 60% at any time. 25 Pa. Code § 123.41.

22. Under Pennsylvania law, no person may permit air pollution as that term is defined in the APCA. 25 Pa. Code § 121.7.

23. The APCA defines "air pollution" as follows:

> The presence in the outdoor atmosphere of any form of contaminant, including, but not limited to, the discharging from stacks, chimneys, openings, buildings, structures, open fires, vehicles, processes or any other source of any smoke, soot, fly ash, dust, cinders, dirt, noxious or obnoxious acids, fumes, oxides, gases, vapors, odors, toxic, hazardous or radioactive substances, waste or any other matter in such place, manner or concentration inimical or which may be inimical to the public health, safety or welfare or which is or may be injurious to human, plant or animal life or to property or which unreasonably interferes with the comfortable enjoyment of life or property.

35 P.S. § 4003.

24. The standards cited in Paragraphs 21-23 have been approved by the EPA and incorporated into the Pennsylvania SIP.  40 C.F.R. § 52.2020(c)(1).

25. Additionally, Pennsylvania has adopted an operating permits program under Title V of the CAA for sources of air pollution and incorporated this program into the Pennsylvania SIP.  61 Fed.Reg. 39,597 (1996); 40 C.F.R. § 52.2020(c)(110); 40 C.F.R. Part 70, App. A ("Pennsylvania").

26. The Plant is subject to a Title V/operating permit issued by Pennsylvania DEP on November 22, 2002 under the APCA and DEP's Title V/operating permits program.  Among other things, this permit limits visible emissions in the same manner as 25 Pa. Code § 123.41.

27. Section 304(a)(1) of the CAA provides for citizen suits to redress for the violation of an "emission standard or limitation" under the CAA, which is defined in Section 304(f) of the CAA, 42 U.S.C. § 7604(f)(4).

28. As standards or limitations under the Pennsylvania SIP, the visible emission standard cited in Paragraph 21 above and the air pollution standard cited in Paragraphs 22-23 above constitute "emission standards or limitations" under 42 U.S.C. § 7604(f)(4) that are subject to citizen suit under 42 U.S.C. § 7604(a).

29. The APCA also provides for citizen enforcement of the visible emission and air pollution standards through actions in court.  35 P.S. § 4013.6(c).

30. As a standard or limitation established under a permit in effect pursuant to CAA Title V and/or the Pennsylvania SIP, the visible emission limitation contained in the Title V/operating permit constitutes an "emission standard or limitation" under 42 U.S.C. § 7604(f)(4) that is subject to citizen suit under 42 U.S.C. § 7604(a)(1).

31.     The APCA also provides for citizen enforcement of permits issued under the APCA.  35 P.S. § 4013.6(c).

## Claims for Relief

### Count 1:  Visible Emission Violations of State Implementation Plan (CAA)

32.     The allegations of all preceding paragraphs are incorporated herein by reference.

33.     Since at least November of 2002, emissions from Boilers 1 and 2 have repeatedly violated and are in violation of the visible emission standards in 25 Pa. Code § 123.41. Since at least December of 2002, emissions from Boilers 3 at the Plant have repeatedly violated and are in violation of the visible emission standards in 25 Pa. Code § 123.41.

34.     These violations of 25 Pa. Code § 123.41 constitute violations of the Pennsylvania SIP and of "emission standards and limitations" under the CAA, 42 U.S.C. § 7604(f)(4).

### Count 2:  Visible Emission Violations of Pennsylvania Standards (APCA)

35.     The allegations of all preceding paragraphs are incorporated herein by reference.

36.     Since at least November of 2002, emissions from Boilers 1 and 2 at the Plant have repeatedly violated and are in violation of the visible emission standards in 25 Pa. Code § 123.41. Since at least December of 2002, emissions from Boiler 3 at the Plant have repeatedly violated and are in violation of the visible emission standards in 25 Pa. Code § 123.41.

37.     These violations of 25 Pa. Code § 123.41 constitute violations of the APCA under 35 P.S. § 4008.

### Count 3:  Visible Emission Violations of Title V Permit (CAA)

38.     The allegations of all preceding paragraphs are incorporated herein by reference.

39.     Since at least November of 2002, emissions from Boilers 1 and 2 at the Plant have repeatedly violated the visible emission standards in the Title V/operating permit for the Plant.

40.     Since at least December of 2002, emissions from Boilers 3 at the Plant have repeatedly violated the visible emission standards in the Title V/operating permit for the Plant.

41.     These violations of visible emission standards in the Title V/operating permit constitute violations of "emission standards and limitations" under the CAA, 42 U.S.C. § 7604(f)(4).

### Count 4:  Visible Emission Violations of Title V Permit (APCA)

42.     The allegations of all preceding paragraphs are incorporated herein by reference.

43.     Since at least November of 2002, emissions from Boilers 1 and 2 at the Plant have repeatedly violated the visible emission standards in the Title V/operating permit for the Plant.

44.     Since at least December of 2002, emissions from Boiler 3 at the Plant have repeatedly violated the visible emission standards in the Title V/operating permit for the Plant.

45. These violations of the Title V/operating permit constitute violations of the APCA under 35 P.S. § 4008.

**Count 5: Air Pollution Violations of State Implementation Plan (CAA)**

46. The allegations of all preceding paragraphs are incorporated herein by reference.

47. On July 22, 2006, the Plant released blackish material to the air from Units 1 and 2 that deposited on the surrounding area, including but not limited to homes, crops, decks, swimming pools, cars and trucks, lawns, gardens, lawn furniture, swing sets and other children's toys.

48. On June 10, 2007, the Plant released material to the air that deposited on the surrounding area, including but not limited to homes, lawns, vehicles, and playground equipment.

49. On or about July 7-8, 2007, the Plant released material to the air that deposited on the surrounding area, including but not limited to homes and yards.

50. The release of particulate matter from the Plant in the manner described in the preceding paragraphs and the ongoing releases of particulate matter from the Plant in the manner described in Counts 1-4 above constitute "air pollution" as defined in the APCA, 35 P.S. § 4003, that is prohibited by regulations implementing the APCA, 25 Pa. Code § 121.7.

51. For the reasons set forth in Paragraph 28 above, these violations of the prohibition against causing air pollution at 25 Pa. Code § 121.7 constitute violations of

the Pennsylvania SIP and violations of "emission standards and limitations" under the CAA, 42 U.S.C. § 7604(f)(4).

### Count 6:  Air Pollution Violations of the Pennsylvania Standards (APCA)

52.    The allegations of all preceding paragraphs are incorporated herein by reference.

53.    The air pollution violations under 25 Pa. Code § 121.7 constitute violations of the APCA under 35 P.S. § 4008.

### Count 7:  Private Nuisance

54.    The allegations of all preceding paragraphs are incorporated herein by reference.

55.    Plaintiff Ralph H. Hysong lawfully possesses property near the Plant. Specifically, Mr. Hysong owns and resides in his home and surrounding land in Raccoon Township, Pennsylvania, and owns a mobile home and four lots in Shippingport Borough, Pennsylvania.  Mr. Hysong's declaration is Exhibit B to this Complaint.

56.    Air pollution from the Plant, including but not limited to soot and other particles, has significantly interfered with Mr. Hysong's ability to use and enjoy his property, and has reduced the value of his home, mobile home, and properties. Mr. Hysong suffers reduced resale value of his home and property due to air pollution from the Plant.

57.    Plaintiff Anna May Moore lawfully possesses property near the Plant. Specifically, Ms. Moore owns and resides in her home and surrounding land in Hookstown, Pennsylvania.  Her property includes an additional building, a barn, a horse arena.  Ms. Moore's declaration is Exhibit C to this Complaint.

58. Air pollution from the Plant, including but not limited to soot and other particles, has significantly interfered with Ms. Moore's ability to use and enjoy her property, and has reduced the value of her home and property.

59. Plaintiff Robert Jones lawfully possesses property near the Plant. Specifically, Mr. Jones owns and resides in his home and surrounding land in Aliquippa, Pennsylvania. Mr. Jones' declaration is Exhibit D to this Complaint.

60. Air pollution from the Plant, including but not limited to soot and other particles, has significantly interfered with Mr. Jones' ability to use and enjoy his property, and has reduced the value of his home and property.

61. Defendant's interference with the use and enjoyment of property belonging to Ralph Hysong, Anna May Moore, and Robert Jones is intentional and/or unreasonable, as Defendant has failed and is failing to use available methods to reduce or eliminate its emissions of soot and other particles.

62. Defendant's interference with the use and enjoyment of property belonging to Ralph Hysong, Anna May Moore, and Robert Jones is negligent, reckless and/or caused by ultrahazardous conduct.

63. Defendant knew that invasion of its contaminants onto neighboring properties, including but not limited to those belonging to Ralph Hysong, Anna May Moore, and Robert Jones, was substantially certain to result from its acts and omissions at the Plant.

64. Defendant's unreasonable and continuing conduct constitutes a private nuisance since it is an unreasonable interference with the property of Ralph Hysong, Anna May Moore, and Robert Jones, and is a direct and proximate cause of continuing

injuries and damages to their property. Specifically, air pollution from the Plant contaminates their property, creates a health hazard on their property, impairs the aesthetic enjoyment of their property, and significantly diminishes the utility, value, and function of their property for many purposes and intended uses.

**Count 8: Public Nuisance**

65.     The allegations of all preceding paragraphs are incorporated herein by reference.

66.     Defendant has caused an unreasonable interference with the rights common to the general public to have a clean environment, including clean air, water and soil, and not to be exposed to harmful air pollution.

67.     Under the APCA, a violation of the APCA or of any rule or regulations promulgated thereunder or any order, plan approval, or permit issued by the DEP under the APCA shall constitute a public nuisance. 35 P.S. § 4013.

68.     Defendant's conduct violated the CAA and the APCA, as set forth above, and therefore constituted a public nuisance under 35 P.S. § 4013.

69.     Plaintiffs Ralph Hysong, Anna May Moore, and Robert Jones, as property owners, have suffered special harm because of the physical contamination on their property, the substantial diminution of the value of their property, the unreasonable interference in the use and enjoyment of their property, impairment of the aesthetic enjoyment of their property, their exposure to air pollution and fallout on their property, and because of the contamination of their property.

70.     Plaintiffs Ralph Hysong, Anna May Moore, and Robert Jones, as property owners, have also suffered special harm since they have incurred costs in responding to

the contamination that has impacted their properties.

71. As a direct and proximate result of Defendants' unreasonable, unwarranted and unlawful creation and maintenance of a continuing public nuisance, Plaintiffs Ralph Hysong, Anna May Moore, and Robert Jones have suffered diminution in property value and other damages due to the Defendant's wrongful interference with their property rights.

### Count 9:  Trespass

72. The allegations of all preceding paragraphs are incorporated herein by reference.

73. Defendant has intentionally released air pollution, including but not limited to soot and other particles, that has entered the property of Ralph Hysong, Anna May Moore, or Robert Jones without their consent.  Defendant's acts and omissions are a direct and proximate cause of this ongoing invasion of their property, which constitutes a trespass, has caused injuries and damages as alleged above, and is continuing.

### Relief Requested

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Declare that Defendant has violated and continues to be in violation of visible emission standards, the prohibition against "air pollution", the CAA, and the APCA;

(2) Enjoin Defendant from further violations of these standards and prohibitions, the CAA, and the APCA;

(3) Order Defendant to take all necessary steps to comply with emission standards, including but not limited to installing adequate pollution controls at the Plant;

(4) Order Defendant to pay civil penalties for its violations;

(5) Order Defendant to take all necessary steps to stop nuisance and trespass to the properties of Ralph Hysong, Anna May Moore, and Robert Jones, including but not limited to installing adequate pollution controls at the plant;

(6) Order Defendant to pay damages to Ralph Hysong, Anna May Moore, and Robert Jones for nuisance and trespass to their properties;

(7) Order Defendant to refrain from conduct causing a public nuisance;

(8) Award Plaintiffs their costs and reasonable attorney and expert witness fees;

(9) Retain jurisdiction over this action to ensure compliance with the Court's decree; and

(10) Grant such other relief as the Court deems just and proper.

Respectfully submitted,

FOR PLAINTIFFS PENNFUTURE,
RALPH HYSONG, ANNA MAY MOORE,
and ROBERT JONES

**10/18/07**                               **s/ Charles McPhedran**
_____                             _____
Date                                       Charles McPhedran, Senior Attorney
                                           PennFuture
                                           1518 Walnut Street, Suite 1100
                                           Philadelphia, PA  19102
                                           (215) 545-9693 (phone)
                                           (215) 545-9637 (fax)
                                           mcphedran@pennfuture.org
                                           Bar Id. No. PA 60123

Of Counsel:

Stephanie Kodish, Counsel
Environmental Integrity Project
1920 L Street NW, Suite 800
Washington, DC  20036
(202) 263-4442 (phone)
(202) 296-8822 (fax)
skodish@environmentalintegrity.org
Bar Id. No. DC 493405