IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CITIZENS FOR PENNSYLVANIA'S FUTURE, RALPH HYSONG, ANNA MAY MOORE, ROBERT JONES,**<br><br>Plaintiffs,<br><br>v.<br><br>**FIRSTENERGY GENERATION CORP.,**<br>Defendant. | CIVIL ACTION NO. 07-1412<br><br>JUDGE JOY FLOWERS CONTI<br><br><br><br>FILED ELECTRONICALLY |

## PARTIAL CONSENT DECREE

Whereas, in a Complaint filed on October 18, 2007, Citizens for Pennsylvania's Future (PennFuture) alleged that Defendant FirstEnergy Generation Corp. violated the Clean Air Act, 42 U.S.C. §§ 7401-7671q (CAA), and the Pennsylvania Air Pollution Control Act, 35 P.S. §§ 4001-4106, at the Bruce Mansfield plant in Shippingport, Pennsylvania (Plant); and

Whereas, this Partial Consent Decree resolves all violations alleged in Counts 1-6 of the Complaint and nothing in the Complaint, nor in this Partial Consent Decree, nor in the execution and implementation of this Partial Consent Decree, shall be treated as an admission of any violation of the CAA or its implementing regulations, or any State or local equivalent act or

2

implementing regulations cited herein in any litigation or forum whatsoever, except that the terms of this Partial Consent Decree, and/or Defendant's failure to comply with the terms and conditions thereof, may be used by PennFuture in any action to enforce the terms of this Partial Consent Decree or as otherwise permitted by law; and

Whereas, Defendant has taken measures to reduce emissions from the Plant, and agrees to take additional measures as described herein; and

Whereas, in the same Complaint, Ralph Hysong, Anna May Moore, and Robert Jones (Individual Plaintiffs) alleged private nuisance, public nuisance, and trespass as a result of air pollution from the Plant; and

Whereas, Ralph Hysong has entered into a Confidential Settlement Agreement & Release resolving those claims; and

Whereas, the parties agree, and the Court by entering this Partial Consent Decree finds, that settlement of the claims alleged in Counts 1-6 of the Complaint without further litigation or trial of any issues is fair, reasonable, and in the public interest; and

Whereas, this Partial Consent Decree does not resolve the claims of Anna May Moore and Robert Jones.

NOW, THEREFORE, before the taking of any testimony and without the adjudication of any issue of fact or law, it is hereby ADJUDGED, ORDERED, AND DECREED as follows:

### Jurisdiction and Venue

1.    This Court has subject matter jurisdiction under Section 304(a) of the CAA, 42 U.S.C. § 7604(a), and 28 U.S.C. §§ 1331, 1367.

3

2.      Venue is appropriate in the Western District of Pennsylvania under Section 304(c)(1) of the CAA, 42 U.S.C. § 7604(c)(1), and 28 U.S.C. § 1391(b), because the Plant is located in this District.

**Definitions**

3.      "Controlled Condensation Method" means United States Environmental Protection Agency (U.S. EPA) Conditional Test Method 13 (CTM-013).

4.      For purposes of Paragraphs 23 and 28, an "Exceedance" is defined as numerical opacity observations conducted in accordance with U.S. EPA Method 9 exceeding the opacity limitations established by 25 Pa. Code § 123.41.

5.      "Title V Permit" means Title V/state operating permit No. 04-00235 issued by the Pennsylvania Department of Environmental Protection (Pennsylvania DEP) to Defendant for the Plant as revised on September 19, 2005, as it may from time to time be amended, modified, or renewed.

6.      "U.S. EPA Method 5" means "Determination of Particulate Matter from Stationary Sources", 40 C.F.R. Part 60, Appendix A-3, Method 5, and any subsequent revisions thereto.

7.      "U.S. EPA Method 9" means "Visual determination of the opacity of emissions from Stationary Sources", 40 C.F.R. Part 60, Appendix A-4, Method 9, and any subsequent revisions thereto.

8.      "U.S. EPA Method 201A" means "Determination of $PM_{10}$ and $PM_{2.5}$ Emissions from Stationary Sources (Constant Sampling Rate Procedure)" as proposed by U.S. EPA at 74 Fed. Reg. 12,970 (March 25, 2009), and any subsequent revisions thereto.

4

9.    "U.S. EPA Method 202" means "Dry Impinger Method for Determining Condensable Particulate Emissions from Stationary Sources", as proposed by U.S. EPA at 74 Fed. Reg. 12,970 (March 25, 2009), and any subsequent revisions thereto.

10.    "Sulfuric Acid Mist" means the sum of sulfur trioxide (SO3), gaseous sulfuric acid, and sulfuric acid mist.

## **Plant Improvements**

### Units 1 and 2 Improvements

11.    Defendant shall install continuous emission monitors for particulate matter (PM CEMS) on Units 1 and 2 by October 31, 2009, and file certification applications for the PM CEMS with Pennsylvania DEP by December 31, 2009.

12.    Defendant shall install roughing mist eliminators at Unit 2 by December 31, 2010 and at Unit 1 by December 31, 2012.

13.    Defendant shall improve the mist eliminator wash water systems by installing new strainers at Unit 2 by December 31, 2010 and at Unit 1 by December 31, 2011.

14.    Defendant shall replace the existing primary mist eliminators at Unit 2 by December 31, 2010 and Unit 1 by December 31, 2012 to reduce the potential for scrubber carryover.

15.    As of the date of entry of this Partial Consent Decree and continuing during the term of this Partial Consent Decree, Defendant shall clean the induced draft (ID) fans on Units 1 and 2, as needed, using an ID fan spray system controlled by the Plant's digital process control system to prevent operation of the ID fan sprays when stack conditions are below saturation temperature, prevent simultaneous spraying of two ID fan sprays on the same flue, and prevent

inadvertent water flow to the ID fan sprays. Nothing in this Paragraph shall prevent future improvements to the ID fan cleaning process on Units 1 and 2.

Unit 3 Improvements

16.    Defendant shall install a scrubber bleed system on Unit 3 by December 31, 2009.

17.    Defendant shall insulate the two flue liners in the Unit 3 stack by December 31, 2011.

Units 1, 2, and 3 Improvements

18.    Defendant shall complete an assessment and issue a report regarding remedial measures for air in-leakage downstream of the economizer of Units 1, 2 and 3 (the "Air In-Leakage Report") within 18 months of the date of entry of this Partial Consent Decree. The Air In-Leakage Report will include measurements of O2 at the economizer outlets and the ID fan inlets, or an alternate method of determining overall air in-leakage. Defendant shall complete implementation of remedial measures identified in the Air In-Leakage Report during the next available scheduled outage with a duration of at least 56 days at each of Units 1, 2 and 3 and not later than 36 months after the Air In-Leakage Report is submitted.

19.    Defendant shall improve the selective catalytic reduction outlet monitors by installing new nitrogen oxides/sulfur dioxide probes and installing new ammonia analyzers by December 31, 2009.

20.    Defendant shall complete an assessment of the performance of the sodium bisulfide (SBS) injection lances at the current locations and at alternate locations (the "SBS Lance Report") within 12 months of the date of entry of this Partial Consent Decree. If such SBS Lance Report concludes that material improvements can be achieved through relocation of SBS lances, Defendant shall (a) complete the engineering and design for relocating SBS

6

injection lances at Units 1, 2, and 3 within 12 months of the SBS Lance Report and (b) complete implementation of such recommendations during the next available scheduled outage with a duration of at least 56 days at each of Units 1, 2 and 3 and not later than 36 months of the completion of engineering and design.

Continued Plantwide Measures

21.    Defendant shall continue operation of SBS (or other sorbent) injection systems to minimize formation of Sulfuric Acid Mist. Defendant shall maintain an annual average SBS molar ratio of 1.0 or greater on each of Units 1, 2 and 3, to achieve a stack $SO_3$ concentration no higher than 5 ppm (or such lower limit required by regulation or permit). This average SBS molar ratio shall be monitored by the Plant's digital process control system and reported on a calendar year basis. If Defendant transitions to another sorbent, such transition shall commence at a single Unit and be accompanied by testing to determine the appropriate molar ratio to control Sulfuric Acid Mist to 5 ppm (or such lower limit required by regulation or permit). Following such molar ratio testing, Defendant shall maintain an annual average molar ratio as determined by such testing utilizing another sorbent on each of Units 1, 2 and 3, which shall be monitored by the Plant's digital process control system and reported annually.

22.    Defendant shall continue operation of combustion optimization system to minimize formation of soot, nitrogen oxides and carbon monoxide.

Monitoring

23.    Defendant shall conduct U.S. EPA Method 9 observations of the Units 1/2 stack and the Unit 3 stack at the Plant after dissipation of the steam plume between 1:00 p.m. and 4:00 p.m. on Monday (or Tuesday), Wednesday (or Thursday) and Friday for the initial 180 days following the date of entry of this Partial Consent Decree. Over the next 540 days, the frequency

of Defendant's U.S. EPA Method 9 observations during each three consecutive calendar month period shall be determined by the number of opacity Exceedances occurring in the immediately preceding three consecutive calendar month period for each stack as follows:

| Stack Exceedances | # Observations/Wk. | Day(s) Observations to be Conducted |
|---|---|---|
| more than 4 | 3 | Mon. (or Tues.), Wed. (or Thurs.) and Friday |
| 3 to 4 | 2 | Mon. (or Tues. or Wed.) and Thurs. (or Fri.) |
| 0 to 2 | 1 | Mon. (or next possible day) |

For purposes of this Paragraph, Defendant shall conduct U.S. EPA Method 9 observations on both the Units 1/2 stack and the Unit 3 stack for a minimum of one hour between 1:00 p.m. and 4:00 p.m. on the day(s) indicated; provided, that if observations are not possible due to circumstances beyond Defendant's control on the day indicated, Defendant shall conduct readings on the next day indicated in parenthesis, continuing as needed to succeeding days as indicated. If observations are indicated by the table above for a Friday, but are not possible due to circumstances beyond Defendant's control, Defendant shall resume the schedule indicated on the following Monday.

24.    Defendant's agreement to conduct U.S. EPA Method 9 observations under this Partial Consent Decree shall not be deemed to be a waiver in any other action or proceeding of any arguments Defendant may have regarding the appropriateness of U.S. EPA Method 9 observations for determining compliance with applicable visible emission standards.

25.    During the initial 720 days of this Partial Consent Decree, Defendant shall complete stack tests for particulate matter in accordance with U.S. EPA Method 5 and proposed U.S. EPA Method 201A and 202. If U.S. EPA Method 201A is not possible at the time of any stack test due to moisture, Defendant shall complete stack tests for particulate matter with U.S. EPA Method 5 and proposed U.S. EPA Method 202. Defendant shall perform testing for

particulate matter annually as required to maintain certification of the stack particulate monitors for Units 1-3.

26.      Defendant shall complete stack testing of Sulfuric Acid Mist using the Controlled Condensation Method within 9 months of the date of entry of this Partial Consent Decree and, if requested by PennFuture, a second test using the Controlled Condensation Method within 18 months of the date of entry. If any Sulfuric Acid Mist levels are greater than 5 ppm during the second test, and if PennFuture requests an additional test, Defendant shall conduct a third test between 18 months and 30 months of entry of this Partial Consent Decree.

27.      Tests for particulate matter under Paragraph 25 shall be conducted in accordance with Pennsylvania Code Title 25, Environmental Protection, Chapter 139.11(1), and the Pennsylvania DEP Source Testing Manual Revision 3.3, November 2000 (including but not limited to Paragraphs 2.1.2.5 and 2.1.1.10 therein). Such tests shall consist of three runs (at least one run shall be performed during a period of representative soot blowing, which is consistent with the maximum frequency and duration normally experienced for the total testing period), will be scheduled at least one month after the conclusion of a planned maintenance outage, and will utilize representative fuel.

Other Terms

28.      Until December 31, 2011, Defendant shall undertake the following measures in the event that (a) the PM CEMS readings for a Unit exceed the Title V Permit limits for particulate matter five or more times in three consecutive calendar months, or (b) U.S. EPA Method 9 observations for a stack conducted in accordance with the Title V Permit and this Partial Consent Decree result in five or more Exceedances of the Title V Permit opacity limit in three consecutive calendar months:

9

a.      analysis of such Unit's operational data;

b.      review of operating and maintenance procedures;

c.      review of soot control decision tree analysis;

d.      training of all control room operators and production supervisors; and

e.      documentation of the investigation, including steps taken to prevent its recurrence.

These measures shall be completed within 60 days of the fifth Exceedance under this Paragraph.

29.      Within 10 days of the date of entry of this Partial Consent Decree, Defendant shall withdraw its pending application to Pennsylvania DEP for an alternative opacity limitation at the Plant. Under this provision, Defendant reserves its right to reapply for such a limitation in the future.

## Reporting

30.      Defendants shall provide copies of the following reports and other documents required under this Partial Consent Decree to PennFuture within 30 days of completion:

a.      The Air In-Leakage Report;

b.      The SBS Lance Report;

c.      Any report regarding engineering and design for relocating SBS injection lances;

d.      Annual reports of SBS or other sorbent molar ratios;

e.      Stack tests;

f.      Reports of investigations of air pollution episodes and/or exceedances; and

g.      The withdrawal of the application for an alternative opacity limitation.

10

31.    Until termination of this Partial Consent Decree, Defendant shall provide copies of reports and other documents regarding air quality at the Plant to PennFuture at the time of submission to Pennsylvania DEP and/or U.S. EPA.  Such reports include, but are not limited to:

a.    PM CEMS reports;

b.    Relative accuracy test audit reports;

c.    Semiannual reports under the Title V Permit;

d.    Annual compliance certifications under the Title V Permit;

e.    Reports to Pennsylvania DEP and/or U.S. EPA of releases of air pollution; and

f.    Any stack testing not required under the Partial Consent Decree.

32.    Until termination of this Partial Consent Decree, Defendant shall provide copies of U.S. EPA Method 9 observations to PennFuture as follows:

a.    All U.S. EPA Method 9 observations from July 1, 2009 to the date of entry of this Partial Consent Decree shall be provided by the 15th day of the month following the date of entry;

b.    From date of entry to December 31, 2010, Defendant shall provide U.S. EPA Method 9 observations for each month by the 15th day of the following month;

c.    From January 1, 2011 until termination of the decree, Defendant shall provide U.S. EPA Method 9 observations for each calendar quarter by the end of the month following the end of the calendar quarter; and

d.    With any notice of termination under Paragraph 42 below, Defendant shall provide all remaining observations as of the date of the notice.

33.    Documents required to be provided by Defendants to PennFuture under this Partial Consent Decree shall be sent by e-mail to the following addresses:

11

Charles McPhedran, Law Staff Chair
PennFuture
1518 Walnut Street, Suite 1100
Philadelphia, PA 19102
mcphedran@pennfuture.org

John Baillie, Senior Attorney
PennFuture
425 Sixth Avenue, Suite 2770
Pittsburgh, PA 15219
baillie@pennfuture.org

If any documents required to be provided cannot be successfully transmitted to PennFuture by e-

mail, Defendant shall send them by first class mail to the addresses in this Paragraph no later

than five business days after the deadline otherwise established under this Partial Consent

Decree.

### General Provisions

34.    Petition for Stay:  Within 10 days of execution of this Partial Consent Decree, the

Parties shall jointly petition the Court for a stay of proceedings in this matter based upon a

settlement having been reached.  In their petition, the parties shall explain their intention to have

this Partial Consent Decree entered as an order of the Court following expiration of the 45-day

period described in the next paragraph.

35.    Government Comment or Intervention; Entry:  Within 10 days of execution of

this Partial Consent Decree, PennFuture shall serve this Partial Consent Decree on the Attorney

General of the United States and the Administrator of U.S. EPA.  If the United States does not

comment or intervene within 45 days of receipt, the parties shall submit this Partial Consent

Decree to the Court together with a joint motion for its entry as an Order of this Court.  If the

United States comments or intervenes in this proceeding, the parties will work together and with

the United States determine whether this matter can still be resolved without further litigation.

12

At any time following comment or intervention by the United States, one or more of the parties may petition the Court to lift the stay of proceedings.

36.    <u>Pre-Date of Entry Obligations</u>:  Obligations of Defendant that pre-date the entry of this Partial Consent Decree apply upon execution of the Partial Consent Decree by the parties. However, to the extent that this Partial Consent Decree is revised due to comments or intervention by the United States, Defendant's obligation to comply with provisions affected by such revisions will be excused until fifteen days after entry of this Partial Consent Decree or the date on which Defendant's compliance would have been required absent such revision, whichever is later.

37.    <u>Costs of Litigation</u>:  Under 42 U.S.C. § 7604(d), the Court, in issuing any final order in a citizen suit under the Clean Air Act, may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the Court determines such award is appropriate.  In settlement of the Plaintiffs' costs of litigation in this proceeding, Defendant agrees (a) to pay to PennFuture the amount of $310,000 and (b) to transfer to PennFuture the quantity of 10,000 Pennsylvania Tier 1 renewable energy credits (Pa. RECs). Payment of the amount of $310,000 shall be made no later than 60 days after entry of this Partial Consent Decree.  Payment shall be made by wire transfer to Fulton Bank, Routing No. 031301422, Account No. 3623 52132.  The Pa. RECs shall be generated during the reporting year starting July 1, 2009 and shall be transferred within 20 days from date of entry of this Partial Consent Decree.  If Defendant fails to pay and transfer the full agreed amount and RECs under this Paragraph, PennFuture may file a motion for fees and costs with the Court, and may seek its full fees and costs in this proceeding up to and including this motion.

13

38.    <u>Continuing Jurisdiction</u>: The parties agree that the Court shall maintain jurisdiction over this matter to enforce the terms of this Partial Consent Decree until such time as it is terminated in accordance with Paragraph 42 below.  The parties agree that in the event of a breach of this Partial Consent Decree, the non-breaching party may pursue any rights, remedies or sanctions available under applicable laws.

39.    <u>Severability</u>.  If any provision of this Partial Consent Decree is declared invalid or unenforceable, the remaining provisions shall continue in effect.

40.    <u>Entire Agreement</u>.  This Partial Consent Decree represents the entire agreement between the parties.  Prior drafts of this Partial Consent Decree and related term sheets shall not be used in any action involving the interpretation or enforcement of this Partial Consent Decree.

41.    <u>Modification</u>:  This Partial Consent Decree may be modified by written agreement of the parties, which modification shall be promptly filed with the Court.

42.    <u>Termination</u>:  This Partial Consent Decree shall terminate upon fulfillment of the Plant Improvements set forth in Paragraphs 11 to 20 of this Partial Consent Decree and other obligations herein but not later than December 31, 2014.  Upon fulfillment of the Plant Improvements and other obligations herein, either party may provide notice of termination of this Partial Consent Decree to the Court and to the other party.  This Partial Consent Decree shall terminate 30 days after such notice unless (a) objections are filed with the Court by the non-noticing party or (b) otherwise ordered by the Court.

43.    <u>Dismissal with Prejudice</u>:  In consideration of Defendant's obligations under this Partial Consent Decree, PennFuture agrees that the claims in Counts 1-6 of the Complaint shall be dismissed with prejudice.

44.    <u>Certification</u>:  The undersigned representatives of each party certify that

14

they are authorized by the party they represent to consent to this Partial Consent Decree.

Respectfully submitted,

FOR PLAINTIFFS PENNFUTURE,
RALPH HYSONG, ANNA MAY MOORE,
AND ROBERT JONES

Date: 8/17/09

Charles McPhedran, Senior Attorney
Citizens for Pennsylvania's Future
1518 Walnut Street, Suite 1100
Philadelphia, PA 19102
(215) 545-9693 (phone)
(215) 545-9637 (fax)
mcphedran@pennfuture.org
Bar Id. No. PA 60123

John K. Baillie, Senior Attorney
Citizens for Pennsylvania's Future
425 Sixth Avenue, Suite 2770
Pittsburgh, PA 15219
(412) 258-6684 (phone)
(412) 258-6685 (fax)
baillie@pennfuture.org
Bar Id. No. PA 66903

FOR DEFENDANT FIRSTENERGY
GENERATION CORP.

Charles Lasky
Vice President, Fossil Operations

Douglas J. Weber
Senior Counsel